## A03A0648. LIEBNO v. DREXEL CHEMICAL COMPANY et al.
(586 SE2d 67)

MILLER, Judge.

Mary Beth Liebno appeals from the grant of summary judgment to Drexel Chemical Company (Drexel) on Liebno's claims for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964. 42 USC § 2000e et seq. Since the facts viewed in the light most favorable to Liebno fail as a matter of law to establish the existence of actionable sexual harassment or retaliation, we are constrained to affirm.

On appeal from the grant of summary judgment, we conduct a de

novo review of the evidence, viewed in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact remains and whether the moving party is entitled to judgment as a matter of law. *Rubin v. Cello Corp.*, 235 Ga. App. 250-251 (510 SE2d 541) (1998). Motions for summary judgment are appropriate in hostile work environment sexual harassment cases, as the courts are charged with the responsibility of policing the baseline to determine what constitutes an actionable claim. *Mendoza v. Borden, Inc.*, 195 F3d 1238, 1244 (III) (11th Cir. 1999).

Viewed most favorably to Liebno, the record reveals that on March 9, 2001, Liebno was working late with her direct supervisor after all other employees had left the facility. Liebno's supervisor put his arm around Liebno's shoulders, which led Liebno to believe that her supervisor was going to thank her for working late. Instead of thanking her, the supervisor took off his glasses and said that Liebno might smack him for what he was about to do, and then tried to kiss her. Liebno turned away so that she could not be kissed, and the supervisor immediately let go of Liebno and backed away from her. The supervisor then asked Liebno if she wanted him. Liebno responded that she did not, and the supervisor then said, "You do things to me." Liebno asked, "Like what?" and the supervisor said, "Like this," and grabbed Liebno's right buttock. Prior to this incident, there had never been any contact of a sexual nature between Liebno and her supervisor, nor was there any contact of a sexual or suggestive nature between them following this incident.

Liebno reported the incident to Drexel's Director of Manufacturing on March 12, 2001, and, pursuant to Drexel's sexual harassment policy, the Director immediately reported the complaint to his supervisor. Following an investigation in which Drexel concluded that the allegations of sexual harassment could not be substantiated, Drexel nevertheless reassigned Liebno's supervisor to a different plant.

In April 2001, Liebno gave notice that she would be resigning from the company and that her last day would be sometime at the beginning of May. Liebno then reached an agreement with her new supervisor that her final day would be on May 4, 2001. Liebno's replacement was hired on April 26, 2001, and when it became clear to Liebno that she would not have sufficient time to train her replacement by May 4, Liebno requested to work part time for a week or two following May 4 to continue training her replacement. Liebno's new supervisor initially agreed with this arrangement, but then informed Liebno on the afternoon of May 4 that he had spoken with his supervisors that day and that they had informed him that May 4 would be Liebno's last day.

Liebno left Drexel on May 4, but returned the following Friday to receive her final paycheck. When she arrived, she saw that the for-

mer supervisor who had tried to kiss her was back in the office. The supervisor who had temporarily replaced the former supervisor informed Liebno that Drexel management had decided to return the former supervisor to the office after Liebno's last day, which is why management wanted to keep the originally-agreed-to date of May 4 as Liebno's last day.

Liebno sued her former supervisor and Drexel for sexual harassment and retaliation under Title VII, and for damages pursuant to various state law tort claims.[1] Liebno later amended her complaint to eliminate all of the state tort claims, leaving only the Title VII action. Drexel moved for summary judgment, which motion the trial court granted, and Liebno now appeals.

There are two types of actionable sexual harassment under Title VII: (1) quid pro quo, "which [is based on] threats [that] are carried out," and (2) hostile environment, which consists of "bothersome attentions or sexual remarks that are sufficiently severe or pervasive to create a hostile work environment." *Burlington Indus. v. Ellerth*, 524 U. S. 742, 751 (II) (118 SC 2257, 141 LE2d 633) (1998). Since the scenario here did not involve threats that were carried out against Liebno, her claim is in essence a contention that the isolated incident with her supervisor was sufficiently severe to create a hostile work environment. We hold that the evidence was not sufficient to create a jury issue with respect to such a contention.

To create a jury issue on her hostile environment claim based on the incident with her supervisor, Liebno was required to present evidence showing: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment, such as requests for sexual favors, sexual advances, and other inappropriate conduct of a sexual nature; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive working environment; and (5) a basis for holding Drexel liable. *Mendoza*, supra, 195 F3d at 1245 (IV). The dispositive issue on Liebno's hostile environment claim is whether the evidence showed that the conduct at issue here was sufficiently severe to alter the conditions of her employment and create a hostile working environment.

Showing that harassing conduct is severe or pervasive requires more than an employee's subjective belief that the harassment meets such standards; it also requires an objective analysis by the court to determine if such a perception is reasonable. See *Harris v. Forklift Systems*, 510 U. S. 17, 21-22 (II) (114 SC 367, 126 LE2d 295) (1993);

---

[1] A default judgment was entered against the former supervisor, and he is not a party to this appeal.

accord *Mendoza*, supra, 195 F3d at 1246 (IV). In this regard, a court considers four factors when making an objective determination as to whether the harassing conduct is sufficiently severe or pervasive to be actionable under Title VII: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with the employee's work performance. *Harris*, supra, 510 U. S. at 23 (II). Generally, isolated incidents, unless extremely serious, do not amount to discriminatory changes in the terms and conditions of one's employment. *Faragher v. City of Boca Raton*, 524 U. S. 775, 788 (II) (A) (118 SC 2275, 141 LE2d 662) (1998).

Here, the evidence does not show that the single incident at issue was sufficiently severe to alter the terms and conditions of Liebno's employment. The Eleventh Circuit has previously held that situations involving more frequent or egregious behavior than that involved in the present case do not amount to sexual harassment as a matter of law. See *Gupta v. Florida Bd. of Regents*, 212 F3d 571, 578-579 (I) (B), 585 (II) (A) (2) (11th Cir. 2000) (no hostile work environment sexual harassment as a matter of law where, over extended period of time, supervisor called victim several times after work, stared at her inappropriately, touched her inner thigh, touched her bracelets and other jewelry, unbuckled his pants in front of her, and lifted her skirt); *Mendoza*, supra, 195 F3d at 1248-1250 (IV) (no sexual harassment as a matter of law where supervisor rubbed hip against victim while touching her shoulders, stared at her and followed her constantly, and made inappropriate gestures while staring at victim's groin). Here, although the conduct alleged from the isolated incident was clearly inappropriate and reprehensible, alone it is insufficient to create a jury question regarding Liebno's claim of sexual harassment from a hostile work environment. See *Gupta*, supra, 212 F3d at 585 (II) (A) (2).

To the extent that Liebno argues that Drexel should be held liable for retaliation against her for her complaining to management about sexual harassment, such argument is without merit. To show retaliation, Liebno was required to prove that: "(1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." (Citation omitted.) *Gupta*, supra, 212 F3d at 587 (II) (B). As it is undisputed here that Liebno chose to resign from Drexel and selected her own departure date of May 4, she cannot show that Drexel took any adverse employment action against her by requiring her to leave on the original date that she had already chosen for her-

self. The trial court properly granted Drexel's motion for summary judgment.

*Judgment affirmed. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED JULY 14, 2003 —
RECONSIDERATION DENIED JULY 28, 2003 — 

*James N. Finkelstein*, for appellant.

*Roberts, Rainwater & Ingram, David N. Rainwater*, for appellees.